UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CROWN CORK & SEAL COMPANY, INC. MASTER RETIREMENT TRUST, *et al.*,<br>　　　　　　　　　　Plaintiffs,<br>　　　v.<br>CREDIT SUISSE FIRST BOSTON CORP., *et al.*,<br>　　　　　　　　　　Defendants. | Case No. 12-cv-05803-JLG<br>Judge James L. Graham |
| STATE OF ARIZONA, *et al.*,<br>　　　　　　　　　　Plaintiffs,<br>　　　v.<br>CREDIT SUISSE FIRST BOSTON CORP., *et al.*,<br>　　　　　　　　　　Defendants. | Case No. 12-cv-05804-JLG<br>Judge James L. Graham |
| CITY OF CHANDLER, *et al.*,<br>　　　　　　　　　　Plaintiffs,<br>　　　v.<br>BANK ONE, N.A., *et al.*,<br>　　　　　　　　　　Defendants. | Case No. 12-cv-05805-JLG<br>Judge James L. Graham |
| LLOYDS TSB BANK PLC,<br>　　　　　　　　　　Plaintiff,<br>　　　v.<br>BANK ONE, N.A, *et al.*,<br>　　　　　　　　　　Defendants. | Case No. 12-cv-07263-JLG<br>Judge James L. Graham |
| METROPOLITAN LIFE INSURANCE COMPANY, *et al.*,<br>　　　　　　　　　　Plaintiffs,<br>　　　v.<br>BANK ONE, N.A., *et al.*,<br>　　　　　　　　　　Defendants. | Case No. 12-cv-07264-JLG<br>Judge James L. Graham |

Opinion and Order

　　　This matter is before the court to determine whether to sever the claims against defendant Lance Poulsen from the trial of plaintiffs' claims against Credit Suisse. Though Credit Suisse has not filed a formal motion for severance, several briefs submitted by Credit Suisse contain requests for severance under Fed. R. Civ. P. 21. (Docs. 63, 86, 111). Plaintiffs have opposed the requests. (Docs. 82, 83, 96, 97). The matter has also been discussed in bi-monthly telephone conferences the court has conducted with the parties since November 26, 2012.

Rule 21 allows a court to "sever any claim against a party." Fed. R. Civ. P. 21.[1] "The decision whether to grant a severance motion is committed to the sound discretion of the trial court." New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1082 (2d Cir. 1988). A court should consider whether severance will "serve the ends of justice and further the prompt and efficient disposition of litigation." T.S.I 27, Inc. v. Berman Enters., Inc., 115 F.R.D. 252, 254 (S.D.N.Y. 1987); accord In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 247 F.R.D. 420, 427 (S.D.N.Y. 2007). Courts generally examine the following factors in connection with a motion to sever:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd., 806 F.Supp.2d 712, 720 (S.D.N.Y. 2011); In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 214 F.R.D. 152, 154–55 (S.D.N.Y. 2003).

This first factor weighs against severance. Plaintiffs (the Arizona Noteholders, MetLife, and Lloyds) have each brought suit in relation to their failed investments in National Century. Their claims against both Credit Suisse and Poulsen arise out of the same transactions – their purchases of National Century notes from 1998 to 2002. Plaintiffs allege that Poulsen, who occupied positions of executive authority at National Century and its note-issuing subsidiaries, and Credit Suisse, which sold the notes to plaintiffs, knew that the notes had little or no value when they were issued and sold to plaintiffs. The claims against both defendants uniformly relate to plaintiffs' losses on the National Century notes.

As to the second factor, there is some overlap in the questions of fact and law presented by the respective claims against Credit Suisse and Poulsen. The Arizona Noteholders assert claims against both Credit Suisse and Poulsen for fraud, conspiracy, and violations of various blue sky

---

[1] One of Credit Suisse's filings (doc. 63) makes reference to Fed. R. Civ. P 42(b), whereby a court may order separate trials of separate issues or claims. The considerations of Rule 42(b) – judicial economy, prejudice, and convenience – are substantially the same as those of Rule 21. See Deskovic v. City of Peekskill, 673 F.Supp.2d 154, 171 n.11 (S.D.N.Y. 2009).

laws.[2] MetLife asserts claims against both Credit Suisse and Poulsen for fraud, violations of § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and violations of New Jersey's blue sky law.[3] Lloyds asserts claims of fraud and § 10(b) violations against Credit Suisse, while asserting claims against Poulsen for breach of fiduciary duty and § 20(a) control person liability.

The Arizona Noteholders' claims for conspiracy provide one area of overlap of facts and issues. They allege that Credit Suisse and Poulsen both participated in a conspiracy to defraud investors. Poulsen was the alleged mastermind of the scheme to defraud. Credit Suisse allegedly gained knowledge of National Century's misuse of investors' funds and allegedly arranged and attended presentations and meetings in which Poulsen lied to investors. Having this alleged knowledge, Credit Suisse allegedly continued to bring National Century notes to market, twice provided short-term financing when National Century had a liquidity crisis, and defended National Century when concerns arose about the creditworthiness of the note programs. See generally In re Nat'l Century Fin. Enters., Inc., 846 F.Supp.2d 828, 896-900 (S.D. Ohio 2012) (examining the evidence regarding the Arizona Noteholders' conspiracy claim and denying Credit Suisse's motion for summary judgment).

Some overlap exists too in the fraud and statutory claims. Plaintiffs allege that they received offering materials, including private placement memoranda ("PPM"), in connection with their decisions to purchase notes. Plaintiffs allege that both Credit Suisse and Poulsen are responsible for alleged misrepresentations in the offering materials. See Nat'l Century, 846 F.Supp.2d at 860-862 (examining the evidence concerning Credit Suisse's responsibility for the PPMs); see In re Nat'l Century Fin. Enters., Inc., No. 2:03-md-1565, 2006 WL 469468, at *4 (Feb. 27, 2006) (reciting the allegations of MetLife and Lloyds that the "Offering Materials contained false representations by the Directors, of whom Poulsen was one. The false representations included, among other things, that: NPF XII would purchase eligible receivables only; NPF XII would be capitalized by National Century in accordance with the Indenture; and NPF XII would properly maintain the trust accounts. According to the complaints, the Directors stated in the Offering Materials that . . . they accepted

---

[2] The Arizona Noteholders have asserted additional claims against Poulsen, including claims for breach of fiduciary duty and aiding and abetting fraud. The court further notes that Credit Suisse has moved for reconsideration of the court's decision denying Credit Suisse's motion for summary judgment as it related to the conspiracy claim.

[3] MetLife asserts additional claims against Poulsen for breach of fiduciary duty and control person liability under § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t.

responsibility for the Materials."). Plaintiffs must further prove their fraud and statutory claims against both Credit Suisse and Poulsen by showing at trial that they justifiably relied upon the alleged misrepresentations in the PPMs. There are thus common questions of law and fact presented by the claims against each defendant.

This is not to say there is a complete sameness in the facts and legal issues, nor could one expect there to be in litigation of this magnitude. Poulsen and Credit Suisse played different roles in National Century's operations. Poulsen was its chief executive officer and dominant shareholder. Credit Suisse was an outside financial institution hired to assist National Century in selling its notes. The claims against Poulsen focus more on how he bankrupted National Century and made the securities it issued worthless. The claims against Credit Suisse relate more to the securities transactions themselves. Credit Suisse is alleged to have knowingly made misrepresentations to plaintiffs about National Century on matters relevant to the quality of the notes. Perhaps it would be fair to say that the case against Poulsen is largely concerned with his actions and the case against Credit Suisse is more concerned with its knowledge. The case against Credit Suisse is undoubtedly more complex and nuanced than the one against Poulsen. Poulsen's wrongdoing is well-established. His criminal convictions on multiple counts of fraud and his 30-year sentence have been affirmed on appeal. U.S. v. Poulsen, 655 F.3d 492 (6th Cir. 2011), *cert. denied*, 132 S.Ct. 1772 (2012). Plaintiffs' case against Credit Suisse relies on a great number of witnesses and documents that relate to Credit Suisse's knowledge and its interactions with plaintiffs and that do not seem to be relevant to the case against Poulsen. Even so, the cases against both defendants involve many of the same claims and invariably stem from plaintiffs' purchases of the notes. According to plaintiffs, Poulsen is the one primarily responsible for the notes having no value and Credit Suisse is the one primarily responsible for plaintiffs believing that they did.

In arguing that Poulsen's severance would promote judicial economy, Credit Suisse cites several cases that are readily distinguishable. In Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999), the court held that bifurcation of a trial in an action under 42 U.S.C. § 1983 was appropriate where the outcome of the first issue – whether police officers used excessive force – could eliminate the need for a trial on the second issue – the liability of the municipality. Here, the jury's decision as to Credit Suisse's liability would not eliminate the need for a determination as to Poulsen's liability. Credit Suisse cites other cases in which courts severed certain defendants from trial because the claims against the moving defendants arose from separate incidents or shared no

common questions of law or fact with the claims against the severed defendants.  See Deskovic v. City of Peekskill, 673 F.Supp. 154, 170-71 (S.D.N.Y. 2009) (noting "the absence of factual or legal overlap" in the claims); Lukowski v. County of Seneca, No. 08-cv-6098, 2009 WL 467075, at **15-16 (W.D.N.Y. Feb. 24, 2009) (noting that the claims arose from "distinct incidents").  Here, the claims against Credit Suisse and Poulsen arise from the same transactions and there is overlap in the questions presented by those claims.

The court finds that judicial economy will be served by Poulsen's inclusion in the trial.  As explained in the court's January 25, 2013 order (doc. 132), a jury must apportion fault among alleged joint tortfeasors when N.Y. Gen Oblig. Law § 15-108(a) is invoked.  See In re Eastern & Southern Districts Asbestos Litig., 772 F.Supp. 1380, 1400 (E.D.N.Y & S.D.N.Y. 1991), *aff'd in relevant part sub nom.* In re Brooklyn Navy Yard Asbestos Litig., 871 F.2d 831 (2d Cir. 1992) (stating that a jury should apportion fault "among all possible tortfeasors" even where some of the tortfeasors would be jointly and severally liable); see also 15 U.S.C. § 78u-4(f)(3)(A) (requiring an apportionment for every person claimed to have caused or contributed to a plaintiff's loss).  The same jury should determine the issues of Credit Suisse's liability, Poulsen's liability, and, if either is found liable, the apportioned share of responsibility of each liable defendant and of the settling defendants.  See Schipani v. McLeod, 541 F.3d 158, 162 (2d Cir. 2008); Bryant v. State, 818 N.Y.S.2d 186, 186, 850 N.E.2d 1161, 1161 (N.Y. 2006).

Credit Suisse objects that Poulsen's inclusion at trial will be prejudicial and that plaintiffs seek to include him only for the effect of associating Credit Suisse with a convicted felon.  Credit Suisse observes that plaintiffs have no hope for recovery against Poulsen (a $2.3 billion restitution order was imposed against Poulsen as part of his criminal judgment), that plaintiffs failed to depose Poulsen (despite being granted leave to do so, see doc. 1614 in In re National Century Financial Enterprises, Inc. Investment Litigation, MDL-1565 (S.D. Ohio)), and that a jury could apportion fault to Poulsen without his participation in the trial, see In re Brooklyn Navy Yard Asbestos Litig., 871 F.2d 831, 844-45 (2d Cir. 1992) (regarding apportionment of fault to bankrupts and nonparties).  As to this last observation, the court notes that a jury may apportion fault to Poulsen, who has not filed for bankruptcy and who is a party, only if plaintiffs have proved his liability at trial or the parties have stipulated to his liability.  See Eastern & Southern Districts Asbestos Litig., 772 F.Supp. at 1405-06 (holding that fault should not be apportioned to a defendant against whom "no case had been proven").

5

Plaintiffs have offered to enter into a stipulation with Credit Suisse regarding Poulsen's liability and his inclusion in the jury's apportionment of fault.  In that manner, Poulsen would not participate in the trial and Credit Suisse's concerns about prejudice would be resolved.  Credit Suisse has indicated its willingness to enter into a stipulation, see doc. 111 at n.9, and the court is hopeful that the parties can reach an appropriate stipulation.  But if the parties fail to do so, the court believes that severance is not the appropriate means to address the concerns about prejudice.  Credit Suisse and Poulsen are alleged co-conspirators, and the evidence concerning Credit Suisse's involvement in a conspiracy was sufficient to withstand a motion for summary judgment.  Plaintiffs are entitled to try their claim to a jury.  The court may minimize any associational prejudice by giving limiting instructions to the jury.  See New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1082-83 (2d Cir. 1988) (in a civil antitrust suit, upholding district court's denial of severance as to alleged co-conspirators who were criminally convicted, where district court gave appropriate limiting instructions).

Accordingly, Credit Suisse's request to sever defendant Lance Poulsen is denied without prejudice to the parties entering into a stipulation that would sever Poulsen from the trial.

    s/ James L. Graham
    JAMES L. GRAHAM
    United States District Judge

DATE: January 30, 2013